Milligan, J.,
delivered the opinion of the court:
This action is prosecuted under the act of Congress approved March 3,1863, to recover the net proceeds of one hundred and eighteen bales of cotton, alleged to have been captured by the-United States military forces in Savannah, Georgia, in I860.
The facts on which the case rests are found to be as follows:
1. The claimant is a naturalized citizen of the United States.
2. In July and August, 1864, he shipped from Macon, Georgia, to Erwin & Hardee, merchants at Savannah, two lots of cotton, amounting in the aggregate to one hundred and twenty-eight bales, with the request that they hold it for him for some time to come. Erwin & Hardee replied to him by requesting a remittance to cover costs and charges, and he directed them to sell enough of the cotton in their hands to meet the necessary expenses on it. Pursuant to this order, they afterward sold ten bales, which covered all charges against it. The balance, one hundred and eighteen bales, remained on storage with them until after the occupation of the city by General Sherman, when it wras seized by the United States military forces, shipped to New York, and there sold, and the proceeds paid into the Treasury.
*409 3. The claimant’s family and connections appear to bare resided in New York. When he first came South does not very distinctly appear. One of the witnesses, Mr. Levi, says: “He lived in the North from 1850 up to 1862; I saw him in Georgia in 1862, and he told me he lived in the country.” Tbe witness Brown says that he resided at Fort Gaines in Georgia, (sometimes called the country,) “ during the war,” and came to Savannah occasionally, where he met him, and they conversed on the subject of the war. Mr. Wurzburg, another witness, says, in substance, that he was in the South at the breaking out of the Avar, residing at Fort Gaines, and at the commencement of the war he left there and came up to him at Macon, where he made his home, but was not-tliere all the time.
He ayus engaged in general speculation and trading over the country; and after he left Fort Gaines he does not appear to have had any fixed residence.. The precise point of time when he left Fort Gaines does not satisfactorily appear. It is proven that he admitted he resided there in 1862, while another says he lived there “ during the war,” and still another, he left there at the breaking out of the rebellion. The testimony is conflicting, not to say suspicious-, and, on the w'hole, we feel fully authorized in finding that he did not change his residence at Fort Gaines until some time in 1862.
After he left Fort Gaines, he is shown, wdth reasonable certainty, (if the testimony is to be credited, and some of it bears the ear-marks of suspicion,) to have given no aid or comfort to the rebellion; but not a single witness speaks of his political status while he resided at Fort. Gaines who appears ever to have been there, or to have had an opportunity, personally, to have judged of his conduct Avhile there.
In vieAV of all the evidence in this record and the due weight to be attached to it, we.are unable to find that he has established his loyalty to the United States throughout the entire period of the war.
On these facts, Avhieh are carefully drawn from the record before us, it is obvious there can be no recovery in this case. The rule, as laid down in the Margaret Bond Case, (2 G. Oís. B., in 533,) is as folioavs : u To entitle the claimant to recover, the act requires that he should prove, by those who had the opportunities of observing his conduct, that he did not give such assistance or encouragement to the insurrection. He must go further. *410 His evidence to that effect must cover tbe entire period oí tbe war, so that it shall appear that he never gave any aid or comfort to the rebellion.”
This rule is founded on the language of the act of Congress, and we have uniformly enforced it, and when applied to the facts disclosed in this record it completely cuts off' the claim.ant’s right of recovery in this action.
The petition must be dismissed.